STEPHANIE S. CHRISTENSEN
Acting United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
GAVIN L. GREENE (Cal. Bar No. 230807)
JOLENE TANNER (Cal. Bar No. 285320)
Assistant United States Attorneys
    Federal Building, Suite 7211
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-4600
    Facsimile: (213) 894-0115
    E-mail: Gavin.Greene@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| Paul Yong Kim,<br><br>    Plaintiff,<br><br>    v.<br><br>United States of America,<br><br>    Defendant. | Case No. 5:22-cv-00691-SPG-SPx<br><br>Notice of Motion and Motion to Dismiss Complaint; Memorandum of Points and Authorities<br><br>Date:      November 9, 2022<br>Time:     1:30 p.m.<br>Courtroom: 5C<br>Location:   First Street Courthouse<br>                350 West First Street<br>                Los Angeles, California<br><br>Hon. Sherilyn Peace Garnett |

1

PLEASE TAKE NOTICE that at the above captioned date and time, the United States of America will and hereby does move this court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). The grounds for this motion are more fully set forth in the accompanying Memorandum of Points and Authorities.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on July 6, 2022, during which parties thoroughly discussed the substance and potential resolution of the filed motion by teleconference.

Respectfully submitted,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

Dated: July 22, 2022

/s/
GAVIN GREENE
JOLENE TANNER
Assistant United States Attorneys
Attorneys for the United States of America

2

**Contents**

I. Introduction ................................................................................................. 1

II. Statement of Facts ..................................................................................... 2

III. Law and Analysis ..................................................................................... 3

    A. Rule 12(b)(6) Standard ........................................................................ 3

    B. First Claim for Relief: Plaintiff is liable for the NIIT and is not exempt under the Totalization Agreement ......................................... 5

        1.   Totalization agreement with South Korea provides Social Security benefits to individuals that work in both countries .............................................................................. 5

        2.   Net Investment Income Tax (NIIT) ....................................... 6

        3.   Totalization agreements must be interpreted in a manner consistent with the shared expectations of the contracting parties based on the document's text and context ................................................................................... 7

        4.   The Structure of the Internal Revenue Code indicates that the NIIT is an income tax that is not exempt from tax by the Totalization Agreement ......................................... 9

    C. Second Claim for Relief: Plaintiff is not entitled to reduce the NIIT by the Foreign Tax Credit ..................................................... 11

        1.   The Internal Revenue Code and Treasury Regulation § 1.1411–1(e) explicitly prohibit Plaintiff from reducing the NIIT by the Foreign Tax Credit ................................. 11

        2.   Plaintiff is not entitled to Foreign Tax Credit under the Income Tax Treaty ...................................................... 13

IV. Conclusion ............................................................................................. 15

i

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 4

*Bank Melli Iran v. Pahlavi*, 58 F.3d 1406 (9th Cir. 1995) ............................... 7

*Baturin v. Comm'r*, 31 F.4th 170 (4th Cir. 2022) .............................................. 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 4

*Branch v. Tunnel*, 14 F.3d 449 (9th Cir. 1994) .................................................. 4

*Corley v. United States*, 556 U.S. 303 (2009) ................................................... 10

*Crow v. Comm'r*, 85 T.C. 376 (1985) .................................................................. 11

*DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655 (9th Cir. 1992) .................. 5

*Eshel v. Comm'r*, 831 F.3d 512, 514 (D.C. Cir. 2016) ................................. 5, 7

*Flemming v. Nestor*, 363 U.S. 603 (1960) ........................................................... 5

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1990) ........................................................................................................... 4

*Kappus v. Comm'r*, 337 F.3d 1053, 1058-60 (D.C. Cir. 2003) ........................ 14

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) .............................................................. 13

*Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901 (C.D. Cal. 2021) ...................... 3

*Lozano v. Alvarez*, 572 U.S. 1 (2014) .................................................................. 7

*Medellin v. Texas*, 552 U.S. 491 (2008) ............................................................... 8

*Russello v. United States*, 464 U.S. 16 (1983) .................................................. 10

*Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987) ....... 5

*Segel v. Comm'r*, 89 T.C. 816 (1987) ................................................................. 11

*Sumitomo Shoji Am. v. Avagliano*, 457 U.S. 176 (1982) ................................. 8

*Tolbert v. RBC Cap. Mkts. Corp.*, 758 F.3d 619 (5th Cir. 2014) .................... 10

*Toulouse v. Comm'r*, 157 T.C. 49, 55-56 (2021) .............................................. 12

*United States v. Butler*, 297 U.S. 1 (1936) ........................................................ 10

*United States v. Stuart*, 489 U.S. 353 (1989) ..................................................... 8

*Whitney v. Robertson*, 124 U.S. 190 (1888) ...................................................... 8

*Xilinx, Inc. v. Comm'r*, 598 F.3d 1191 (9th Cir. 2010) ..................................... 8

**STATUTES**

26 U.S.C. § 26 .................................................................................................. 11

26 U.S.C. § 1401 ........................................................................................ 5, 8, 9

26 U.S.C. § 1402 .................................................................................................. 8

26 U.S.C. § 1411 ...................................................................................... 7, 9, 13

26 U.S.C. § 3101 ............................................................................................ 5, 9

26 U.S.C. § 3111 ............................................................................................ 5, 9

26 U.S.C. § 3301 .............................................................................................. 11

42 U.S.C. § 401 ................................................................................................ 10

42 U.S.C. § 433 .................................................................................................. 5

42 U.S.C. § 1395i ............................................................................................. 10

**REGULATIONS**

26 C.F.R. § 1.1411–1........................................................................................ 2, 12

**RULES**

Fed. R. Civ. P. 12(b)(6) .................................................................................... 3

# Memorandum of Points and Authorities

## I. Introduction

Plaintiff is not entitled to a refund, and his complaint should be dismissed without leave to amend because he is wrong as a matter of law and the result cannot be changed by amending his complaint. For the 2015 tax year, Plaintiff paid over $600,000 for the net investment income tax (NIIT). Plaintiff now claims that he should not be liable for the NIIT because either it is a Social Security tax and he should be exempt from paying it pursuant to the U.S.-Korean Social Security Agreement (Totalization Agreement), or it is an income tax, and he should be allowed to reduce the NIIT by the Foreign Tax Credit under the United States – Republic of Korea Income Tax Convention (Tax Treaty). Both of Plaintiff's claims are wrong.

The Totalization Agreement between the United States and South Korea entered into force in 2001. Its purpose is to improve Social Security protection for people who have worked in both countries. The Totalization Agreement allows people who would otherwise not be eligible for benefits under the Social Security system of one or both countries to become eligible by considering their participation in one country when determining eligibility for benefits in the other country. It also limits double taxation for people who would otherwise have to pay Social Security taxes to both countries on the same income. To avoid double taxation, the Totalization Agreement references two chapters of the Internal Revenue Code (26 U.S.C. or Code): chapter 2 (which establishes Social Security and Medicare taxes for people that are self-employed), and chapter 21 (which establishes the same taxes for wage earning employees). Congress established the NIIT pursuant to 26 U.S.C. § 1411 in 2010, and it subjects taxpayers with income over a certain threshold to an additional tax on investment income. The NIIT is in chapter 2A, and section 1411 is the only code section in that chapter. The

1

placement of section 1411 in a separate chapter of the Internal Revenue Code indicates that it is different than Social Security and Medicare taxes, and it is not covered by the Totalization Agreement. This interpretation is consistent with the Social Security Administration's summary of the Totalization Agreement that was published in 2018, which makes no reference to the NIIT at all. Under the Totalization Agreement and the Internal Revenue Code, Plaintiff is liable for the NIIT, and therefore he is not entitled to a refund.

Plaintiff's alternative argument – that the NIIT is an income tax that can be reduced by the Foreign Tax Credit pursuant to the Tax Treaty – is also wrong. Section 901 of the Internal Revenue Code provides a credit to taxpayers for certain taxes paid to foreign countries, but the credit can only reduce taxes imposed by chapter 1 of the Code. The NIIT is in chapter 2A and cannot be reduced by the credit under section 901. This is consistent with Treasury Regulation § 1.1411–1(e), which explicitly prohibits taxpayers from reducing the NIIT by the Foreign Tax Credit. The Tax Treaty between the United States and South Korea signed in 1976 allows the United States to tax its citizens on worldwide income. It contemplates a credit for the payment of foreign taxes, but looks to the Internal Revenue Code's limits on the ability of a taxpayer to use the credit, as is the case here, and the Tax Treaty does not provide Plaintiff an independent basis for a refund or credit. Accordingly, Plaintiff's claim for a Foreign Tax Credit must be denied.

## II. Statement of Facts

For purposes of this motion, the following facts are taken from the complaint.[1] Plaintiff is a United States citizen. Complaint, ¶ 1. Until September 13, 2015, Plaintiff was a resident of South Korea. ¶ 7. On

---

[1] All references in the Statement of Facts are to the Complaint for Tax Refund, ECF document number 1.

2

September 14, 2015, Plaintiff became a resident of the United States, living in California. *See* ¶ 8.

On March 16, 2017, Plaintiff filed a claim for refund (Form 1040X) for tax year 2015 seeking a refund of $638,282 for NIIT. ¶ 12. Attached to the claim for refund was a statement explaining Plaintiff's position (¶ 13):

> This return is being amended to exclude net investment income tax in the return as originally filed.
>
> The Taxpayer was a resident of South Korea through September 13, 2015 and was subject to the Korean National Pension Law. Under the U.S. – Korea Social Security Agreement, a Korean Resident is exempt from the U.S. Social Security tax and Medicare tax. Thus, the Taxpayer should not be subject to the Net Investment Income Tax on any income before he became a California resident on September 14, 2015.

On March 5, 2020, IRS Exam proposed to disallow the claim for refund because the NIIT is an income tax, not a Medicare tax. ¶ 14. On March 17, 2020, Plaintiff's CPA responded to the IRS. ¶ 15. On May 28, 2020, Plaintiff's CPA submitted what he characterized as a "protective claim for a decision that section 1411 net investment income tax could be reduced by Foreign Tax Credit under the U.S. – S. Korea Income Tax Treaty." ¶ 16. On October 19, 2021, IRS Appeals sustained the decision made by IRS Exam on March 5, 2020, finding that (1) NIIT was an income tax and thus not subject to exemption under the Totalization Agreement, and (2) Foreign Tax Credits cannot be used to offset the NIIT. ¶ 17.

### III. Law and Analysis

**A. Rule 12(b)(6) Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 906 (C.D. Cal. 2021) (J. Blumenfeld). A plaintiff must state "enough facts to state a claim to relief

3

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. That is, a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555). Assuming the veracity of well-pleaded factual allegations, a court next must "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th

Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *Id.*; *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

**B. First Claim for Relief: Plaintiff is liable for the NIIT and is not exempt under the Totalization Agreement**

**1. Totalization agreement with South Korea provides Social Security benefits to individuals that work in both countries**

Generally, workers in the United States are taxed to support the payment of social security benefits to the retired and to individuals with disabilities. *Eshel v. Comm'r*, 831 F.3d 512, 514 (D.C. Cir. 2016). The expectation is that having contributed to the national economy while actively employed, those workers will later become eligible beneficiaries. *Id.* (citing *Flemming v. Nestor*, 363 U.S. 603, 608–10 (1960)). That system gets complicated, however, for Americans who work overseas for part of their careers and, during those years, are required to pay taxes into a foreign government's social security system. *Id.* Pursuant to 42 U.S.C. § 433(a), Congress authorized the President to enter into social security coordination agreements – known as totalization agreements – with other countries. *Id.* Totalization agreements permit those workers to combine periods of payment into different countries' social security systems to eventually become eligible to receive benefits under a signatory country's system. *Id.* Workers' wages and self-employment income are generally exempt from United States social-security taxation to the extent that they are subject to foreign social-security taxation. *Id.* (citing 26 U.S.C. §§ 1401(c), 3101(c), 3111(c)).

The Totalization Agreement with South Korea was signed on March 13, 2000 and entered into force on April 1, 2001.[2] The Totalization Agreement applied to the following laws in the United States: (1) Title II of the Social Security Act, except sections 226, 226A and 228 and regulations pertaining to those sections; and (2) Chapters 2 and 21 of the Internal Revenue Code and regulations pertaining to those chapters. Totalization Agreement, Article 2 ¶ 1(b). Chapter 2 includes taxes imposed by the Self-Employment Contributions Act (SECA), and Chapter 21 includes taxes imposed by the Federal Insurance Contributions Act (FICA). The Totalization Agreement also applies to future laws which amend or supplement those laws. Totalization Agreement, Article 2 ¶ 3.

The Totalization Agreement explains that in general, "a person employed within the territory of either Contracting State shall, with respect to that employment, be subject to the laws of only that Contracting State." Totalization Agreement, Article 4 ¶ 1. "A self-employed person who resides within the territory of one Contracting State shall be subject to the laws of only that State." Article 4 ¶ 4. Where a person has paid into Social Security for six quarters, but is not otherwise entitled to Social Security benefits, the Social Security Administration must take into account the person's participation under the laws of South Korea to determine eligibility for benefits. *See* Article 6 ¶ 1.

2. **Net Investment Income Tax (NIIT)**

The NIIT applies to certain passive income of individuals, estates, and trusts, rather than earnings subject to Medicare taxes. Individuals with income over a threshold amount are subject to a 3.8 percent tax on net

---

[2] Agreement on Social Security, S. Kor.-U.S., Mar. 13, 2000, State Dept. No. 01-54, https://www.state.gov/wp-content/uploads/2019/02/01-401-Rep.-of-Korea-Social-Security.pdf.

6

investment income. 26 U.S.C. § 1411(a). The threshold amount is $200,000 for taxpayers with the Single filing status. 26 U.S.C. § 1411(b). Net investment income generally includes: (1) interest, dividends, rents, annuities, and royalties, other than such income derived in the ordinary course of a trade or business; (2) income derived from a trade or business in which the taxpayer does not materially participate; (3) income from a business of trading in financial instruments or commodities; and (4) net gain from the disposition of property other than property held in a trade or business in which the taxpayer materially participates. 26 U.S.C. § 1411(c). Section 1411 was enacted in 2010 and became effective for tax years beginning after December 31, 2012. *Health Care and Education Reconciliation Act of 2010*, Pub. L. No. 111-152, § 1402(a)(1), 124 Stat. 1029, 1061.

### 3. Totalization agreements must be interpreted in a manner consistent with the shared expectations of the contracting parties based on the document's text and context

A totalization agreement is "an executive agreement with a foreign country: initiated by the State Department, negotiated by the Social Security Administration, signed by the President and a foreign government, and effective only after submission to Congress." *Eshel v. Comm'r*, 831 F.3d at 518 (citation omitted). Executive agreements must be interpreted under the same principles applicable to international treaties. *Id.* (citing *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1408 (9th Cir. 1995) (other citations omitted)). International executive agreements and treaties are primarily compacts between independent nations, and they should be read in a manner consistent with the shared expectations of the contracting parties based on the document's text and context. *Lozano v. Alvarez*, 572 U.S. 1, 11–12 (2014). "The interpretation of a treaty, like the interpretation of a statute, begins

with its text." *Medellin v. Texas*, 552 U.S. 491, 506 (2008). The text of a treaty or executive agreement controls unless application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories. *United States v. Stuart*, 489 U.S. 353, 365–66 (1989). Treaties are generally liberally construed, but courts should not read international treaties so broadly as to create unintended benefits. *Baturin v. Comm'r*, 31 F.4th 170, 176 (4th Cir. 2022). "Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight." *Sumitomo Shoji Am. v. Avagliano*, 457 U.S. 176, 184–85 (1982); *Xilinx, Inc. v. Comm'r*, 598 F.3d 1191, 1196–97 (9th Cir. 2010). Where a treaty and a statute relate to the same subject, courts attempt to construe them to give effect to both. *Whitney v. Robertson*, 124 U.S. 190, 194 (1888).

The Totalization Agreement in this case provides that it applies to Chapters 2 and 21 of the Internal Revenue Code. Chapter 2 is titled "Tax on Self-Employment Income" and includes 26 U.S.C. §§ 1401 and 1402. Chapter 21 of the Internal Revenue Code is titled "Federal Insurance Contributions Act" and includes 26 U.S.C. §§ 3101-3134. Section 1411, which establishes the NIIT, is contained in Chapter 2A, and it is the only Internal Revenue Code section in that chapter. The placement of section 1411 in a newly created chapter is strong evidence of Congressional intent to exclude the NIIT from Chapter 2 and shield it from the effect of the Totalization Agreement.

Similarly, the Social Security Administration summary of the Totalization Agreement published in September 2018 provides as follows:

> [The Totalization Agreement] improves Social Security protection for people who work or have worked in both countries. It helps many people who, without the agreement, would not be eligible for monthly retirement, disability or survivors benefits under the Social Security

> system of one or both countries. It also helps people who would otherwise have to pay Social Security taxes to both countries on the same earnings.
>
> *The agreement covers Social Security taxes* (including the U.S. Medicare portion) and retirement, disability and survivors insurance benefits. It does not cover benefits under the U.S. Medicare program or the Supplemental Security Income program.

U.S. Soc. Sec. Admin., *Agreement Between the United States and South Korea*, Pub. No. 05-10197, Sept. 2018, https://www.ssa.gov/pubs/EN-05-10197.pdf , at p. 1 (emphasis added). The Social Security Administration explains the general goal of avoiding double taxation for Social Security taxes but makes clear that it only covers Social Security taxes and Medicare. For self-employed individuals, Social Security and Medicare taxes are found in Chapter 2: 26 U.S.C. §§ 1401(a), (b). For wage earners, Social Security and Medicare taxes are found in Chapter 21: 26 U.S.C. §§ 3101(a), (b) for the individual's share, and 26 U.S.C. §§ 3111(a), (b) for the employer's share. Neither cover the NIIT, which is found in Chapter 2A: 26 U.S.C. § 1411. As such, Plaintiff is not entitled to a refund.

**4. The Structure of the Internal Revenue Code indicates that the NIIT is an income tax that is not exempt from tax by the Totalization Agreement**

Congress did not provide a NIIT exemption for totalization agreements, even though it has provided such exemptions to other taxes. Self-employment income and wages are exempt from Social Security and Medicare taxes when they are subject to a totalization agreement. 26 U.S.C. §§ 1401(c), 3101(c), and 3111(c). The NIIT does not contain a similar statutory mechanism to provide relief from taxation where a totalization agreement subjects a taxpayer solely to a foreign country's social security laws. *See* 26 U.S.C. § 1411. This difference in statutory structure indicates

that Congress did not intend to reduce the NIIT liability because of a totalization agreement. This structure should be presumed to be intentional. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship."). Allowing an exception for the NIIT under the Totalization Agreement, even though it does not contain the statutory language used in other code sections, would unacceptably render the language of those sections superfluous. *Tolbert v. RBC Cap. Mkts. Corp.*, 758 F.3d 619, 624 (5th Cir. 2014), citing *United States v. Butler*, 297 U.S. 1, 65 (1936) ("[W]ords cannot be meaningless, else they would not have been used."); *Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basic interpretative canons" is that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (internal quotation marks omitted).

Similarly, Congress allocated the revenues generated from NIIT separately from revenues generated by FICA and SECA taxes, which are allocated to Federal trust funds for social security and the Supplementary Medical Insurance Trust Fund. 42 U.S.C. §§ 401, 1395i. The NIIT revenues are explicitly allocated to the Treasury general fund. Staff of the Joint Comm. on Tax'n, *General Explanation of Tax Legislation Enacted in the 111th Congress*, at 363 (JCS-2-11) (Mar. 16, 2011) ("No provision is made for the transfer of the tax imposed by this provision from the General Fund of the United States Treasury to any Trust Fund.")[3]; Staff of the Joint Comm. on Tax'n, *Description of the Social Security Tax Base*, JCX-36-11, at 24 (June 21, 2011) (also stating that, with regard to the NIIT, "[n]o provision is made for the transfer of the tax from the General Fund of the United States

---

[3] https://www.jct.gov/publications/2011/jcs-2-11/

10

Treasury to any Trust Fund").[4] This structure is consistent with the conclusion that Congress did not intend the NIIT to be covered by the Totalization Agreement.

**C. Second Claim for Relief: Plaintiff is not entitled to reduce the NIIT by the Foreign Tax Credit**

    **1. The Internal Revenue Code and Treasury Regulation § 1.1411–1(e) explicitly prohibit Plaintiff from reducing the NIIT by the Foreign Tax Credit**

Under the Code, United States citizens are generally taxed on their worldwide income regardless of where they reside. *Crow v. Comm'r*, 85 T.C. 376, 380-381 (1985). Deductions against worldwide income and credits against tax are matters of legislative grace. *Segel v. Comm'r*, 89 T.C. 816, 842 (1987). The Code is divided into subtitles, and subtitles are divided into chapters, which impose separate and distinct taxes. Section 1, which is in chapter 1, subtitle A, Income Taxes, of the Code, imposes a tax on the taxable income of individuals (regular tax). *Compare* 26 U.S.C. § 26(b), chapter 1 (referring to tax imposed by section 1 as "regular tax liability") *with* 26 U.S.C. § 3301, chapter 23 (imposing a tax on employers on wages that they pay to their employees).

The Foreign Tax Credit under 26 U.S.C. §§ 27 and 901 can only be used to reduce a taxpayer's income tax under chapter 1 and cannot be used to reduce the NIIT under chapter 2A. As explained by the Tax Court in *Toulouse v. Comm'r*:

> [S]ection 27 provides a credit for "[t]he amount of taxes imposed by foreign countries … against the tax imposed by this chapter to the extent provided in section 901." Section 901 provides a foreign tax credit against regular tax. It clearly states that "the tax imposed by this chapter [1] … [is] credited" with specified amounts. Thus, both

---

[4] https://www.jct.gov/publications/2011/jcx-36-11/

11

> sections 27 and 901 clearly provide that the foreign tax credit allowable under the Code reduces only tax imposed under chapter 1, such as the section 1 regular tax.
>
> …
>
> Section 1411 is in chapter 2A, subtitle A, Income Taxes. Thus, the foreign tax credit under section 27 – which applies to "the tax imposed by this chapter [1]" – does not by its terms apply to offset net investment income tax. Section 1.1411-1(a), Income Tax Regs., provides that "[e]xcept as otherwise provided, all Internal Revenue Code (Code) provisions that apply for chapter 1 purposes in determining taxable income (as defined in section 63(a)) of a taxpayer also apply in determining the tax imposed by section 1411." But tax credits (including the foreign tax credit under section 27) are not taken into account in determining taxable income under section 63(a). See sec. 63(a) (defining "taxable income" to mean gross income minus the deductions allowed by chapter 1 other than the standard deduction). *Section 1.1411-1(a), Income Tax Regs., therefore does not provide for a foreign tax credit against the net investment income tax.*

*Toulouse v. Comm'r*, 157 T.C. 49, 55–56 (2021) (emphasis added). Treasury Regulation § 1.1411–1(e) is explicit that the Foreign Tax Credit under section 901 cannot be used to reduce the NIIT under section 1411:

> Amounts that may be credited against only the tax imposed by Chapter 1 of the Code may not be credited against the section 1411 tax imposed by Chapter 2A of the Code *unless specifically provided in the Code*. For example, the foreign income, war profits, and excess profits taxes that are allowed as a foreign tax credit by section 27(a), section 642(a), and section 901, respectively, are *not allowed as a credit against the section 1411 tax*.

Treas. Reg. § 1.1411–1(e) (emphasis added).

Chapter 2A is titled "Unearned Income Medicare Contribution". Title 26 U.S.C. § 1411 is the only section in chapter 2A, which Congress created when it enacted the net investment income tax. *Toulouse*, 157 T.C. at 59. The placement of section 1411 in a newly created chapter was not

12

happenstance. *Id*. An enumerated chapter of the Code that imposes a distinct and separate tax is part of the Code's fundamental structure. *Id*.

Title 26 U.S.C. § 1411(c)(1)(B) expressly provides for deductions allowed by subtitle A in the computation of net investment income. There is no provision for any credits against the section 1411 tax. The enactment of a 3.8 percent net investment income tax as part of chapter 2A is a clear expression of congressional intent that credits against section 1 do not apply against the section 1411 tax. *Id*. at 60.

Further, the Court must follow the Treasury Regulation that explicitly prohibits Plaintiff from reducing the NIIT by the Foreign Tax Credit. In this case, the language of Treasury Regulation § 1.1411-1(e) is clear – the Foreign Tax Credit under sections 27 and 901 cannot be used to reduce the NIIT under section 1411 – and must be followed. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415–16 (2019) (explaining that if there is only one reasonable construction of a regulation then a court has no business deferring to any other reading, but if genuine ambiguity remains the court should be deferential to an agency's interpretation that falls within the bounds of reasonable interpretation).

**2. Plaintiff is not entitled to Foreign Tax Credit under the Income Tax Treaty**

The Tax Treaty between the United States and South Korea was signed on June 4, 1976, and entered into force on October 20, 1979.[5] In general, a resident of South Korea may be taxed by the United States on any

---

[5] Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and the Encouragement of International Trade and Investment, S. Kor.-U.S., June 4, 1976, 30 U.S.T. 5253, https://www.irs.gov/pub/irs-trty/korea.pdf.

13

income from sources within the United States. Article 4(1). However, the United States may tax a citizen or resident of the United States as if this Tax Treaty had not come into effect. Article 4(4). The United States shall allow to a citizen or resident of the United States as a credit against the United States tax the appropriate amount of South Korean tax. Article 5(1). Such appropriate amount shall be based upon the amount of tax paid to South Korea, but the credit shall not exceed the limitations provided by United States law. *Id.* Thus, the Tax Treaty incorporates the limitations on the Foreign Tax Credit that apply under the Internal Revenue Code.

Plaintiff's "claim for a decision that section 1411 net investment income tax could be reduced by Foreign Tax Credit under the U.S. – S. Korea Income Tax Treaty" does not change the result that he is not entitled to a refund. To the extent that Plaintiff's NIIT liability was based on South Korean sourced income, that income is subject to tax under Article 4, and he is only entitled to a credit in accordance with and subject to the limitations of U.S. domestic law pursuant to Article 5. As explained above, the Code does not allow the Foreign Tax Credit to reduce the NIIT, and the Tax Treaty does not provide an independent basis for applying the Foreign Tax Credit to reduce the NIIT.

Even if the Tax Treaty's reference to domestic law limitations did not explicitly preclude the allowance of a credit against the NIIT, the later enactment of the NIIT (relative to when the Tax Treaty was signed) which created a new Chapter 2A of the Code results in the NIIT applying without any foreign tax credit relief and overrides any inconsistent relief under the Treaty. *See Kappus v. Comm'r*, 337 F.3d 1053, 1058-60 (D.C. Cir. 2003) (finding that, to the extent of any conflict, the statutory alternative minimum Foreign Tax Credit limitation prevails over U.S.-Canada Treaty article on relief from double taxation under the "last-in-time" rule); *cf. Pekar v. Commissioner*, 113 T.C. 158, 161–64 (1999) (finding harmony between

14

U.S.-Germany and U.S.-U.K. treaties and the statutory limitation on alternative minimum foreign tax credit). Based on the foregoing, Plaintiff's second claim for relief should be dismissed for failure to state a claim upon which relief can be granted.

## IV. Conclusion

Based on the foregoing, the Court should grant the Government's Motion to Dismiss without leave to amend.

Respectfully submitted,

STEPHANIE S. CHRISTENSEN
Acting United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

Dated: July 22, 2022

/s/
GAVIN GREENE
JOLENE TANNER
Assistant United States Attorneys
Attorneys for the United States of America