Dennis Brager (Cal Bar. No. 81559)
Guy H. Glaser (Cal Bar. No. 148674)
Brager Tax Law Group, A P.C.
12121 Wilshire Blvd., Ste. 600
Los Angeles, CA 90025
Telephone: (310) 208-6200
Facsimile: (310) 478-8030
Email: dbrager@bragertaxlaw.com
Email: gglaser@bragertaxlaw.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Paul Yong Kim, | Case No. 5:22-cv-00691-SPG-SPx |
| Plaintiff, | Plaintiff's Opposition to Defendant's Motion to Dismiss Complaint; Memorandum of Points and Authorities |
| v. | |
| United States of America | |
| Defendant. | Hon. Sherilyn Peace Garnett |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S

## MOTION TO DISMISS COMPLAINT

Plaintiff, Paul Yong Kim, respectfully asks this Honorable Court to deny the Defendant's motion to dismiss complaint under Federal Rule of Civil Procedure 12(b)(6) (hereinafter referred to as the "Motion" or the "Rule 12(b)(6) motion") because Plaintiff's complaint sufficiently states a claim under which relief can be granted. The grounds denying the Motion are more fully set forth in the accompanying Memorandum of Points and Authorities.

## Table of Contents

Memorandum of Points and Authorities……………………………………………1

I.    Introduction

II.   Statement of Facts……………………………………………………………...1

III.  Law and Analysis…………………………………………………………2

      A.  The Complaint Has Two Cognizable Legal Theories Supporting the
          Relief Requested: (1) If the NIIT is a Medicare Tax it is Exempt from
          Taxation under the Totalilzation Agreement; or, (2) in the alternative,
          if the NIIT is an Income Tax, Then FTCs can be Used to Offset Such
          Tax………………………………………………………………....2

        1.  Plaintiff is Exempt From Having to Pay the NIIT Under the
           Totalization Agreement……………………………………………...3

           a.  The Plain Meaning of the SSTA Demonstrates it
              Applies to the NIIT……………………………………......5

           b.  Applying the SSTA to the NIIT Gives Effect to the
              Intent of the Parties…………………………………...…7

           c.  The Text of Section 1411 of the Code Supports the View
              that in Order to be Congruent with the Parties' Shared
              Expectations to Avoid Double Taxation, the NIIT must be
              Interpreted as Supplementing the Taxes Set out Under
              Chapters 2 and 21 of the Code……..……………….......…8

           d.  The Legislative History Shows that the NIIT's Purpose was
              to Supplement Medicare Taxes……………………...……..9

           e.  The NIIT's Effect Does not Disqualify it From Qualifying
              Under the SSTA…………………………………….......10

           f.  Because the NIIT is Covered by the SSTA, Plaintiff is
              Exempt From It……………………………….…..11

        2.  In the Alternative, if the NIIT is a Medicare Tax,  Then Because
           the Code Provisions Do not Permit Use of FTCs to Offset Such a
            Tax,  The Result is in Direct Contravention of the South Korean

Tax Treaty's Purpose of Avoiding Double Taxation and Should not be Permitted……………………………………………….12

    a. *Toulouse* was Wrongly Decided…………………………..13

    b. If the NIIT is an Income Tax Then it is Covered Under the Terms of the South Korean Tax Treaty…………………...17

        (1) Defendant's Interpretation of the South Korean Tax Treaty is not Entitled to Deference…………………18

        (2) Defendant's Interpretation Undermines the Structure of the South Korean Tax Treaty and Renders Moot a Series of Interrelated Treaty Provisions……………20

        (3) Denying a FTC Based on the Enactment of a New U.S. Income Tax Does Not Comport with the General Treaty Principle that a FTC is Allowed Against a U.S. Income Tax…………………………………………22

IV.    Conclusions…………………………………………………..24

1

## Table of Authorities

2

**Cases**

3  *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC,* 8:09-cv-1264-
4    T-26TGW, 2009 WL 10671157, at *2 (M.D.Fla. Oct. 9, 2009)...................*2*

5  *Ashcroft v. Iqbal,*
     556 U.S. 662 ............................................................................................ 2
6

7  *Bacardi Corp of Am. v. Domenech,*
     311 U.S. 150 (1940) ............................................................................... 20
8

9  *Balistreri v. Pacifica Police Dep't,*
     901 F.2d 696 (9th Cir. 1990) ................................................................... 4

10 *Bank Melli Iran v. Pahlavi,*
11   58 F.3d 1406 (9th Cir. 1995) .................................................................. 4

12 *Burnet v. Chicago Portrait Co.,*
13   285 U.S. 1 (1932) ................................................................................... 20

14 *Cain v. United States,*
     211 F.2d 375 (5th Cir. 1954) ................................................................. 11
15

16 *Commissioner of Internal Revenue v. Bilder,*
     369 U.S. 499, 82 S. Ct. 881, 8 L. Ed. 2d 65 ......................................... 9
17

18 *El Al Israeli Airlines v. Tseng,*
     525 U.S. 155 (1999) ............................................................................... 19

19 *Eshel v. Comm'r* of Internal Revenue Serv.,
20   831 F.3d 512 (D.C. Cir. 2016) ........................................... 4, 5, 6, 7, 19

21 *Eshel v. Comm'r* of Internal Revenue Serv.,
22   142 T.C. 197 (2014) ........................................................................... 4, 6
23

24 *Filler v. Comm'r,*
     74 T.C. 406 (1980) ................................................................................ 21

25 *Great-West Life Assurance Co. v. United States,*
26   678 F.2d 180 (Fed. Cir. 1982) .............................................................. 19

27 *Kolovrat v. Oregon,*
     366 U.S. 187 (1961) .............................................................................. 19
28

*Murat Temple Ass'n v. Live Nation Worldwide, Inc.*,
    953 N.E.2d 1125 (Ind. Ct. App. 2011) ................................................. 2

*National Westminster Bank v. United States*,
    512 F.3d 1347 (Fed. Cir. 2008) .......................................................... 19

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ............................................................... 2

*Pekar v. Commissioner*,
    113 T.C. 158 (1999) ............................................................................ 5

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012) ............................................................... 2

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ............................................................................ 2

*Sumitomo Shoji America Inc. v Avagliano*,
    457 U.S. 176 (1982) .................................................................... 18, 19

*Toulouse v. Commissioner*,
    157 T.C. 49 (2021) ..................................................... 12, 13, 14, 16

*United States v. Butler*,
    297 U.S. 1 (1936) .............................................................................. 22

*United States v. Quality Stores, Inc.*,
    572 U.S. 141 (2014) ............................................................................ 8

*United States v. Stuart*,
    489 U.S. 353,  (1989) ............................................................. 5, 19, 20

*Whitney v. Robertson*,
    124 U.S. 190 (1888) ............................................................................ 5

*Xerox Corp. v. United States*,
    41 F.3d 647 (Fed. Cir. 1994) ........................................................... 5, 6

**Treaties**

*Agreement Between the United States of America and the Republic of Korea
on Social Security, signed at Washington on March 13, 2000, and entered into
force on April 1, 2001*, S. Kr.-U.S., Mar. 13, 2000, State Dept. No. 01-54,
https://www.state.gov/wp-content/uploads/2019/02/01-401-Rep.-of-Korea-
Social-Security.pdf ……………………………………………………… passim

*Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and the Encouragement of International Trade and Investment*, S. Kor.-U.S., June 4, 1976, 30 U.S.T. 5253, https://www.irs.gov/pub/irs-trty/korea.pdf ........................................... passim

**Statutes – Internal Revenue Code 26 U.S.C.**

§ 27.................................................................................................. 12, 13, 18

§ 27(a) ........................................................................................... 23, 24

§ 164 ..................................................................................................... 15

§ 901 .................................................................................. 12,13, 18. 23, 24

§ 901(a) ................................................................................................. 23

§ 904 ............................................................................... 13, 17, 23, 24

§ 1411 ........................................................................ 8, 9, 13, 14, 22

**Other Statutes**

42 U.S.C. at § 1395i(a) ....................................................................... 10

42 U.S.C. § 1395i(a)(2) ...................................................................... 11

42 U.S.C. § 1395i(t)(c) ....................................................................... 11

42 U.S.C.§ 18001 .................................................................................. 9

**Regulations**

Treas. Reg. § 1.1411-1(a) .................................................................... 14

Treas. Reg. § 1.1411-1(e) ............................................................... 8, 12

Treas. Reg. § 1.1411-4(f)(3)(iii) .......................................................... 15

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................... passim

**Legislative Documents**

Health Care and Education Reconciliation Act, Pub. L. No. 111-152, 124 Stat. 1029 (2010) ............................................................................................ 9

JOINT COMM. ON TAXATION, 111TH CONG., GENERAL EXPLANATION OF TAX LEGISLATION 363 (2011)……………………………………………….. 9

OFFICE OF MGMT. & BUDGET, EXEC. OFFICE OF THE PRESIDENT, FISCAL YEAR 1996, BUDGET OF THE UNITED STATES GOVERNMENT – ANALYTICAL PERSPECTIVES 258 (February 1, 1995), downloaded from https://fraser.stlouisfed.org/files/docs/publications/usbanalytical/BUDGET-1996-PER.pdf………………………..........................................………………… 10

**Administrative Documents**

Booklet issued by the Social Security Administration entitled, "AGREEMENT BETWEEN THE UNITED STATES AND SOUTH KOREA, p. 1, downloaded from https://www.ssa.gov/pub/EN-05-10197.pdf.; see also, SOCIAL SECURITY HANDBOOK at Section 107.3 downloaded from https://www.ssa.gov/OP_Home/ handbook/handbook.01/handbook-0107.html ……………………………………. 4

*General Rules of Taxation, Technical Explanation of the Convention between the United States of American and the Republic of Korea for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to taxes on Income and the Encouragement of International Trade and Investment*, Signed at Seoul on June 4, 1976...…………………………………………… 20, 21

Social Security Bulletin, Vol. 78 No. 4 …………………………………….... 3, 7

**U.S. Constitution**

U.S. Const. art. VI, § 2, cl. 2 ................................................................. 4

**Other Authorities**

Blanchard, "The Tax Court's Erroneous Decision in *Toulouse,"* 50 *Tax Mgmt. Int'l J.*, No. 10 (Oct. 1, 2021)....……………………………………………… 13

Gould, "The Tax Court's Flawed Analysis in *Toulouse* Should Be Challenged," *Tax Notes International*, vol. 103, pp. 1695-1696 (09/27/2021) ………………... 13

Internal Revenue Service, *Totalization Agreements* (Mar. 30 2018), downloaded from https://www.irs.gov/individuals/international-taxpayers/totalization-agreements.  Downloaded on August 2, 2022 …………… 7

JUAN A. BECERRA, INTERPRETATION AND APPLICATION OF TAX TREATIES IN NORTH AMERICA 165 (2013) ………………………………... 4

New York State Bar Association Section Report No. 1284, "Report on the Proposed Regulations Under Section 1411," at pages 33-34 (May 15, 2013) ("NYSBA Report") …………………………………………………………… 15

Press Release issued by the Ministry of Foreign Affairs for the Republic of Korea on January 27, 2021, entitled, "Korea-US Agreement on Social Security to Take Effect," downloaded from https://mofa.go.kr/eng/brd/m_5676 …………………………………………… 7

Robert R. Olivia, *Conflicts Between US Tax Treaties and Tax Statutes*, 44 Canadian Tax Journal 1314, 1315 (1994) ……………………………………... 4, 5

Rosenbloom & Shaheen, "*Toulouse*: No Treaty-Based Credit?" *Tax Notes International*, vol. 104, pp. 417-422 (10/25/2021) ………………………….... 13

Treasury Decision 9644, 78 FR 72393-72449, December 2, 2013, as corrected by 79 FR 18161, April 1, 2014 …………………………………………… 18, 23

1

### Memorandum of Points and Authorities

2

## I. **Introduction**

3    Plaintiff is entitled to a refund and his complaint should not be dismissed

4    because Defendant is wrong as a matter of law that the complaint fails to state a

5    claim upon which relief can be granted under the provisions of Federal Rule of

6    Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

7    To the extent the Defendant's arguments in its Motion go to the merits of the

8    claim, the Motion should be denied because that is not the test to determine if the

9    complaint withstands legal scrutiny under Rule 12(b)(6).  In any event, these

10   arguments are also unavailing.  First, if the Net Investment Income Tax ("NIIT") is

11   a Medicare Tax, then the amount of NIIT paid by Plaintiff for the 2015 year is

12   exempt from taxation under the U.S.-Korean Social Security Agreement

13   ("Totalization Agreement" or "SSTA") (see Part III.A.1. below).  Or, in the

14   alternative, if the NIIT is instead an income tax, then the tax paid can be reduced

15   by a Foreign Tax Credit ("FTC") under the terms of the United States-South Korea

16   Income Tax Treaty.  ("South Korean Tax Treaty") and domestic tax law limitations

17   do not apply  (see Part III.A.2, below].

18

## II. **Statement of Facts**

19   Plaintiff, PAUL YONG KIM ("Plaintiff" or "Mr. Kim"), is a U.S. citizen.

20   Complaint at ¶ 1.  Until September 13, 2015, Plaintiff was a resident of South

21   Korea and was subject to South Korea's social security laws.  ¶ 7.  On September

22   14, 2015, Plaintiff became a California resident.  ¶ 8.

23   Plaintiff timely filed a US tax return for the 2015 tax year on which he

24   reported that he owed $644,382 in NIIT.  ¶¶ 9 and 10.  Thereafter, on March 16,

25   2017, Plaintiff timely filed an amended return for the 2015 tax year seeking a

26   refund of $638,282 of the NIIT paid on the grounds it was exempt from taxation

27   under the Totalization Agreement  ("the refund claim").  ¶ 12 and ¶ 13.

28

1

1  Following an exchange of letters between IRS Exam, IRS Appeals and Plaintiff's

2  CPA, on October 19, 2021, IRS Appeals sent a fax to Plaintiff's CPA finding that:

3  (1) the NIIT was an income tax and thus not subject to exemption under the SSTA

4  and (2) FTCs could not be used to offset the NIIT.  ¶ 14-17.

5  **III.  Law and Analysis**

6  It is a widely accepted premise that motions to dismiss are not favored by

7  law.  *See, e.g.,* M*urat Temple Ass'n v. Live Nation Worldwide, Inc.,* 953 N.E.2d

8  1125 (Ind. Ct. App. 2011)

9  Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state

10  a claim upon which relief can be granted."  Under this rule, the Court may dismiss

11  a complaint either because it lacks a cognizable legal theory or because it lacks

12  sufficient factual allegations to support a cognizable legal theory.  *Navarro v.*

13  *Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901

14  F.2d 696, 699 (9th Cir. 1990).  Defendant's Motion seeks to have this case

15  dismissed on the former grounds only.

16  **A.  The Complaint Has Two Cognizable Legal Theories Supporting the**

17  **Relief Requested: (1) If the NIIT is a Medicare Tax it is Exempt from**

18  **Taxation under the Totalization Agreement; or, (2) in the alternative, if the**

19  **NIIT is an Income Tax, Then FTCs can be Used to Offset Such Tax**

20  In resolving a Rule 12(b)(6) motion, the Court must accept all well-pleaded

21  factual allegations as true, construe them in the light most favorable to the

22  Plaintiff, and then determine whether they plausibly give rise to an entitlement to

23  relief.  *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009); *Sateriale v. R.J. Reynolds*

24  *Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012).   "[T]he issue is not whether a

25  plaintiff will ultimately prevail but whether the claimant is entitled to offer

26  evidence in support of the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974);

27  see also *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-

28  T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.) ("[A]

2

motion to dismiss is not a procedure for addressing the merits of the case")

Defendants claim that the two arguments advanced by Plaintiff in the Complaint – (1) that if the NIIT is a Medicare tax it is subject to exemption under the Totalization Agreement, or, (2) in the alternative, if the NIIT is an income tax then FTCs can be applied to offset the tax owed – are not legally sufficient for the relief sought to be granted.  Since Defendant's arguments plainly go to the merits of the Complaint they are not appropriate for consideration in a Rule 12(b)(6) motion and therefore the Motion should be denied.  But, if the Court wants to probe deeper into the legal sufficiency of the claims asserted in the complaint, then the below explains why the arguments advanced by the Defendant are unavailing.

1. Plaintiff is Exempt From Having to Pay the NIIT Under the Totalization Agreement

The United States ("U.S.") has concluded bilateral agreements with trading partners to coordinate social security coverage and benefit provisions for individuals who live and work in more than one country in their working lives.[1] Known as "totalization agreements," they are similar in function and structure to treaties and are legally classified as congressional executive agreements concluded pursuant to statute.[2]  The U.S. and South Korea have entered into such a totalization agreement.[3]  One of the main  purposes of the Totalization Agreement is to eliminate dual social security taxation, where a person would be required to

_____

[1] See Social Security Bulletin, Vol. 78 No. 4.

[2] Id.

[3] Agreement Between the United States of America and the Republic of Korea on Social Security, signed at Washington on March 13, 2000, and entered into force on April 1, 2001, S. Kr.-U.S., Mar. 13, 2000, State Dept. No. 01-54, https://www.state.gov/wp-content/uploads/2019/02/01-401-Rep.-of-Korea-Social-Security.pdf [hereinafter referred to as the "SSTA" or "Totalization Agreement."].

pay social security taxes to the U.S. and South Korea  on the same earnings.[4] As a former South Korea resident during part of the 2015 tax year and a U.S. citizen, Plaintiff is generally subject to the Social Security legislation of both countries absent the application of the Totalization Agreement. As discussed further below, to the extent the NIIT is a Social Security/Medicare Tax, then Plaintiff should be exempt from having to pay such tax on that portion of his earnings while he was a resident of South Korea during the 2015 tax year under the Totalization Agreement.

Because they are considered executive agreement, totalization agreements are to be interpreted in the same way as international tax treaties.  See *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1408 (9th Cir. 1995); *Eshel v. Comm'r of Internal Revenue Serv.*, 831 F.3d 512, 518 (D.C. Cir. 2016) rev'g 142 T.C. 197 (2014).  The resolution of an alleged conflict between domestic law and a treaty in the U.S. relies on the principles of treaty interpretation developed by the U.S. Supreme Court.[5] The U.S. Constitution plays a central role in US tax law and treaty interpretation.[6] The U.S. Constitution's supremacy clause provides that federal statutes and treaties "shall be the supreme law of the land."[7]  Therefore, domestic tax statutes and tax treaties are

---

[4]  Booklet issued by the Social Security Administration entitled, "AGREEMENT BETWEEN THE UNITED STATES AND SOUTH KOREA, p. 1, downloaded from https://www.ssa.gov/pub/EN-05-10197.pdf.; see also, SOCIAL SECURITY HANDBOOK at Section 107.3 downloaded from https://www.ssa.gov/OP_Home/handbook/handbook.01/handbook-0107.html.

[5] JUAN A. BECERRA, INTERPRETATION AND APPLICATION OF TAX TREATIES IN NORTH AMERICA 165 (2013).

[6] *Id.*

[7] *See* U.S. Const. art. VI, § 2, cl. 2.; see also Robert R. Olivia,  *Conflicts Between US Tax Treaties and Tax Statutes*, 44 Canadian Tax Journal 1314, 1315 (1994).

considered to be equal and on the 'same footing'.[8]  Long-established case law holds that where possible, the Internal Revenue Code ("26 U.S.C." or "Code") and a treaty should be read harmoniously to give effect to both.  <u>See</u> *Whitney v. Robertson*, 124 U.S. 190, 194 (1888); *Pekar v. Commissioner*, 113 T.C. 158, 161 (1999).

Totalization agreements are to be interpreted to give effect to the intent of the parties.  <u>See</u> *Eshel v. Comm'r*, 831 F.3d at 518.  The plain text controls unless it leads to a result that is inconsistent with the intent of the parties. *Id.*  Where there are two plausible interpretations of a treaty, "one restricting, the other enlarging, rights which may be claimed under it, the more liberal interpretation is to be preferred." <u>See</u> *United States v. Stuart*, 489 U.S. 353, 367-368 (1989) (citation omitted).  Finally, "if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer." *Xerox Corp. v. United States*, 41 F.3d 647, 658 (Fed. Cir. 1994) (citation omitted).

Applying the foregoing interpretative principles here the following arguments support Plaintiff's contention that if the NIIT is a Medicare Tax it is subject to the Totalization Agreement.

          a.  <u>The Plain Meaning of the SSTA Demonstrates it Applies to the NIIT</u>

The Totalization Agreement explicitly applies to the taxes imposed by Chapter 2 and 21 of the Code.[9] Admittedly, the NIIT is found in Chapter 2A of the Internal Revenue Code, so it is not explicitly covered.  But the Totalization Agreement also applies to "future laws which amend or supplement the laws

---

[8] <u>See</u> Olivia, *supra* note 8, at 1315; <u>see also</u> *Whitney v. Robertson*, 124 U.S. at 194 ("By the constitution, a treaty is placed on the same footing, and made of like obligation, with an act of legislation.").

[9] SSTA, *supra* note 2, at art II, ¶ 1(b)(ii).

specified in [Chapter 2 and 21 of the Code]."[10] Thus, the core inquiry is whether the NIIT amends or supplements the taxes in Chapter 2 or 21.  Since the NIIT does not seek to amend the taxes in Chapter 2 or 21, the question remains whether the NIIT "supplements" the Chapter 2 and 21 taxes.

`The term "supplement" is not defined in the Totalization Agreement. Undefined terms are interpreted according to the meaning provided in the covered laws and regulations – namely Title II of the Social Security Act, and Chapters 2 and 21 of the Code and the regulations thereunder.[11] None of these laws define the term "supplement" further. The plain meaning of the term "supplement" is "[s]omething added to complete a thing, make up for a deficiency, or extend or strengthen the whole."  See *Eshel v. Comm'r*, 142 T.C. at 209.  Chapter 2A should be read as a supplement to laws enumerated in the agreement, specifically Chapters 2 and 21 of the Code. Further, as the U.S. Court of Appeals for the District of Columbia has stated, the interpretation of totalization agreements must be grounded in the text of the agreement, the laws enumerated therein, and "the shared expectation of the contracting governments."  See *Eshel v. Comm'r,* 831 F.3d at 523 ("The totalization agreement is an international executive agreement that must be interpreted in light of its full text and the shared expectations of the contracting governments.").

As will be shown further below, the purpose of the NIIT was to expand the Chapter 2 and Chapter 21 taxes of the Code to increase the amount of money that was used to fund Medicare. This supports the view that the Totalization Agreement applies to the NIIT.  Admittedly, the plain text of the Totalization Agreement does not fully resolve the inquiry as to whether the NIIT supplements the taxes in Chapters 2 and 21 of the Code.  Thus, other interpretative sources must be turned

---

[10] *Id*. at art II, ¶ 3.

[11] *Id*. at art 1,  ¶ 2.

to.  *Id*. at 519-520 (where ambiguity remains after the textual analysis, courts should "consul[t] sources illuminating the "***shared expectations of the contracting parties***, such as the negotiating and drafting history and the post ratification understanding of the contracting parties.").   Chief amongst these are the intention of the parties to the Totalization Agreement.  *Id*.  This is examined next.

b. Applying the SSTA to the NIIT Gives Effect to the Intent of the Parties

One of the key intentions of the parties to the SSTA was to avoid double taxation. Since the NIIT represents double taxation, exempting U.S. citizens resident in South Korea from the NIIT is consistent with the intention of the parties. The Social Security Administration ("SSA") states that one of the principal purposes of totalization agreements is "[t]o eliminate dual social security coverage and taxation."[12] The Internal Revenue Service ("IRS") website states the U.S. enters into totalization agreements with other countries generally for the purposes of "avoiding double taxation of income with respect to social security taxes."[13] Publications of the South Korean government illustrate the same perspective.[14]  In short, both the South Korean and U.S. governments agree that one of the key intentions behind the SSTA is to avoid double taxation.  Left unaddressed, the NIIT represents double taxation to a U.S. citizen, like Plaintiff who also resides in South Korea.

---

[12]  See, e.g., Social Security Bulletin, Vol. 78, No. 4.

[13] See Internal Revenue Service, *Totalization Agreements* (Mar. 30 2018), downloaded from https://www.irs.gov/individuals/international-taxpayers/totalization-agreements.  Downloaded on August 2, 2022.

[14] See. e.g., paragraph 3 of the Press Release issued by the Ministry of Foreign Affairs for the Republic of Korea on January 27, 2021, entitled, "Korea-US Agreement on Social Security to Take Effect," downloaded from https://mofa.go.kr/eng/brd/m_5676.

1    During 2015, Plaintiff was subject to South Korean tax by virtue of his

2    residency in South Korea and to U.S. tax by virtue of his citizenship. The Code

3    seemingly does not provide a FTC against the NIIT for taxes paid to South Korea.

4    See Treas. Reg. §1.1411-1(e).  The IRS's view is that there is no FTC available

5    under the South Korean Income Tax Treaty.[15]  Left unresolved, therefore, the

6    Plaintiff is faced with double taxation.  Thus, interpreting the SSTA to exempt

7    South Korean resident U.S. citizens from the NIIT, because the NIIT

8    "supplements" the existing taxes set out under Chapters 2 and 21 of the Code, is

9    the only interpretation consistent with the expressed intent of the parties to the

10   SSTA.

        c.   The Text of Section 1411 of the Code Supports the View
that in Order to be Congruent with the Parties' Shared
Expectations to Avoid Double Taxation, the NIIT must be
Interpreted as Supplementing the Taxes Set out Under Chapters
2 and 21 of the Code

16   The domestic legislative text implementing the NIIT supports the view that

17   it is designed to "supplement" the taxes set out in Chapters 2 and 21 of the Code

18   which are designed to pay for U.S. Social Security and Medicare. The NIIT is

19   enacted pursuant to 26 U.S.C. § 1411 and is found in Chapter 2A.  The Title to

20   Chapter 2A "Unearned Income Medicare Contribution" suggests that the purpose

21   of the NIIT is to supplement Medicare funding.  Statutory titles are a useful

22   interpretative aid.  See United States v. Quality Stores, Inc., 572 U.S. 141, 150-151

23   (2014) ("Captions, of course, can be "a useful aid in resolving" a statutory text's

24   "ambiguity.") (citation omitted). Thus, the text of the NIIT under the Code

25

26

27

28   [15] See Final Regulations for the NIIT published in the Federal Register on
December 2, 2013, 78 FR 72393 at page 72396.

supports the view that it is intended to supplement Medicare taxes and thus is covered by the SSTA.

### d. The Legislative History Shows that the NIIT's Purpose was to Supplement Medicare Taxes

Legislative history has been found to be a useful tool in interpreting chapter 21 taxes. See *Commissioner of Internal Revenue v. Bilder*, 369 U.S. 499, headnote (1962). The legislative history of section 1411 of the Code supports the view that the intended purpose of the NIIT was to supplement Medicare taxes.

Section 1411 of the Code was enacted by the *Patient Protection and Affordable Care Act* ("PPACA")[16] and the corresponding *Health Care and Education Reconciliation Act* ("HCERA").[17] Those acts contained significant expansions of the taxes imposed under Chapters 2 and 21. For instance, the Medicare tax rate was increased by 0.9% for amounts above a certain threshold. In 2011, the Joint Committee on Taxation issued a report discussing the tax implications of both pieces of legislation. The discussion of the NIIT is situated in the context of a general discussion of the taxes under Chapters 2 and 21.[18] Further, the report describes the NIIT as ''[i]n the case of an individual, estate, or trust an *unearned income Medicare contribution tax*."[19] (emphasis supplied). This reflects the title accorded to the NIIT under Chapter 2A as discussed above. Taken together, the legislative history demonstrates that the overriding purpose of the

---

[16] 42 U.S.C. § 18001 (2010).

[17] Pub. L. No. 111-152, 124 Stat. 1029 (2010).

[18] JOINT COMM. ON TAXATION, 111TH CONG., GENERAL EXPLANATION OF TAX LEGISLATION 363 (2011). ("Social Security benefits and certain Medicare benefits are financed primarily by payroll taxes on covered wages.").

[19] *Id*.

9

1  NIIT was to expand Medicare taxes and thus it can be viewed as "supplementing"

2  Chapters 2 and 21 taxes under the SSTA.

3              e.   The NIIT's Effect Does not Disqualify it From Qualifying

4                   Under the SSTA

5         In its Motion, Defendant contends that since the revenue generated by taxes

6  under Chapters 2 and 21 of the Code is specifically reserved for expenditures on

7  Social Security and Medicare programs, and since the revenue from the NIIT is not

8  so reserved, it cannot be covered by the SSTA. This argument fails for a number of

9  reasons.  First, the premise of the comparison is incorrect.  It is true that tax

10 revenue generated under the NIIT is not specifically reserved for expenditure on

11 Social Security or Medicare programs. Instead, it is directed into Treasury's

12 general fund.[20] But the taxes under Chapters 2 and 21 are not, in effect, specifically

13 reserved for expenditures on Social Security or Medicare programs. Despite their

14 names, these "trust funds" are not actually trust funds. They are more equivalent to

15 bookkeeping entries.[21]

16        First, the Medicare trust fund is only created "on the books of the Treasury

17 of the United States" rather than as an independent trust or pension plan.[22] Second,

18 the tax revenues from the Chapters 2 and 21 taxes are first deposited into the

19 Treasury department's general fund and then "from time to time" transferred into

20

21

22        [20] *Id*. ("No provision is made for the transfer of the tax * * * from the
23 General Fund of the United States Treasury to any Trust Fund.").

24        [21] OFFICE OF MGMT. & BUDGET, EXEC. OFFICE OF THE
25 PRESIDENT, FISCAL YEAR 1996, BUDGET OF THE UNITED STATES
   GOVERNMENT – ANALYTICAL PERSPECTIVES 258 (February 1, 1995),
26 https://fraser.stlouisfed.org/files/docs/publications/usbanalytical/BUDGET-1996-
27 PER.pdf "[t]hese [trust fund] balances are available to finance future benefit
   payments and other trust fund expenditures–but only in a bookkeeping sense."
28

        [22] 42 U.S.C. § 1395i(a) (Federal Hospital Insurance Trust Fund).

the Medicare "trust" fund.[23]  Third, this budgetary allocation is discretionary and is only applicable to "moneys in the Treasury not otherwise appropriated," suggesting that Treasury is not required to allocate the funds to the Medicare "trust" fund.[24]  Fourth, the government has previously taken the position that the funds collected under Chapter 2 are not reserved for specific purposes and are no different than ordinary income taxes.  See *Cain v. United States*, 211 F.2d 375, 376 (5th Cir. 1954).

Finally, even after the funds are allocated, they are routinely used to fund general U.S. government revenues by purchasing U.S. government bonds.  In fact, the Medicare trust fund is *required* to invest surplus tax revenue in general U.S. government bonds.[25]  In short, the tax revenues under Chapters 2 and 21 are not legally allocated to fund Medicare.  Even once allocated, they can be used to fund general programs.  Thus, the NIIT revenues under chapter 2A are no different than amounts collected under Chapters 2, and 21, and  "supplement" those Medicare taxes.

       f.  Because the NIIT is Covered by the SSTA, Plaintiff is Exempt From It.

---

[23] See *Id*. at § 1395i(a)(2) ("The amounts appropriated by the preceding sentence shall be transferred from time to time from the general fund in the Treasury to the Trust Fund, such amounts to be determined on the basis of estimates by the Secretary of the Treasury of the taxes, specified in the preceding sentence, paid to or deposited into the Treasury."); see also, Ausher M.G. Kofsky & Bryan P. Schnmutz, *What a Long Strange Trip It's Been for the 3.8% Net Investment Income tax*, 78 Md. L. Rev. Online 14, 19-20 (2019) (monies for the trusts that finance Medicare are actually sourced from the Treasury's general fund and the general revenue of the federal government)

[24] 42 U.S.C. § 1395i(a).

[25] 42 U.S.C. §1395i(t)(c).

11

Under Articles V and VI of the SSTA, a resident of one country is only subject to the social security taxes of that country and not the other.[26] There is no doubt that Plaintiff was a resident of South Korea (at least until September 13, 2015) and thus falls within the terms of the US-South Korean SSTA.  Thus, since the NIIT is covered by the Totalization Agreement, and since Plaintiff was a resident of South Korea until September 13, 2015, he is exempt from having to pay any NIIT on his earnings while he resided there that year.

**2.  In the Alternative, if the NIIT is a Medicare Tax,  Then Because the Code Provisions Do not Permit Use of FTCs to Offset Such a Tax,  The Result is in Direct Contravention of the South Korean Tax Treaty's Purpose of Avoiding Double Taxation and Should not be Permitted**

If the NIIT is found to be an income tax (instead of a Medicare tax) then, relying upon Article 5 of  the income tax treaty between the United States of America and South Korean (which provides relief from double taxation),[27] Plaintiff should be allowed FTCs to eliminate the duplicate U.S. income tax liability on the same investment income taxed by South Korea.

The Defendant does not contest that Plaintiffs incurred such duplicate South Korea tax.  Instead, the Defendant, relying on the holding in the *Toulouse v. Commissioner*, 157 T.C. 49 (2021)*,* first argues that no FTC should be allowed to offset the NIIT, because 26 U.S.C. §§ 27 and 901 and Treasury Regulation Section 1.1411-1(e) prohibit this by limiting FTCs solely to taxes found in Chapter 1 of the Code.  See Motion at pp. 11-13.  Next, the Defendant claims that no FTC can be used to offset the NIIT under the plain language of the South Korean Tax Treaty.

---

[26] SSTA, *supra* note 3, at art V.

[27] *Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and the Encouragement of International Trade and Investment*, S. Kor.-U.S., June 4, 1976, 30 U.S.T. 5253, https://www.irs.gov/pub/irs-trty/korea.pdf.  ("South Korean Tax Treaty")

Defendant is wrong on both counts. First, the Defendant cannot rely on the holding in *Toulouse*, because the Court got the question (and therefore the answer) in that case wrong.[28]  Also, the Court in *Toulouse* incorrectly presented sections 27 and 901 of the Code as "limitations" when in fact it is 26 U.S.C. § 904 that operates to limits the amount of foreign tax that can be credited.[29]  Finally, the Defendant's interpretation undermines the purpose of the South Korean Tax Treaty to eliminate double taxation, ignores the elaborate treaty mechanisms for how foreign taxes are credited by incorrectly presenting sections 27 and 901 of the Code as "limitations", and ignores the general principle established by Congress that treaty FTC entitlement is wider than that contained in the Code.

a. <u>*Toulouse* was Wrongly Decided</u>

In the *Toulouse* case, the taxpayer argued that the Relief from Double Taxation ("RFDT") articles of the U.S. tax treaties with France and Italy provided an independent basis for a FTC to be applied against the NIIT imposed by section 1411 of the Code."[30]  *Id.*  The U.S. Tax Court disagreed and, pointing to the language in both of the treaties that the U.S. shall allow an FTC "in accordance with the provisions and subject to the limitations of the law of the United States (as

---

[28] <u>See, e.g.</u>, Rosenbloom & Shaheen, "*Toulouse*: No Treaty-Based Credit?" *Tax Notes International*, vol. 104, pp. 417-422 (10/25/2021); Gould, "The Tax Court's Flawed Analysis in *Toulouse* Should Be Challenged," *Tax Notes International*, vol. 103, pp. 1695-1696 (09/27/2021); Blanchard, "The Tax Court's Erroneous Decision in *Toulouse,*" 50 *Tax Mgmt. Int'l J.*, No. 10 (Oct. 1, 2021).

[29] Id.

[30] In *Toulouse*, the Tax Court analyzed the RFDT articles found in Article 24(2)(a) of the Income Tax Treaty between the United States and France ("French Tax Treaty)) and Article 23(2)(a) of the Income Tax Treaty between the United States and Italy ("Italian Tax Treaty). *Toulouse v. Comm'r*, 157 T.C. at 58.  The language found in Article 5 of the South Korean Tax Treaty is almost identical to the language in these articles.

13

1    it may be amended from time to time without changing the general principle

2    hereof)" the court held that the treaties "do not provide an independent basis" for

3    an FTC against the NIIT.  *Toulouse*, 157 T.C. at 61-62.

4         The proper question in *Toulouse,* however, was not whether a treaty

5    provides an "independent basis" for a FTC.  Rather, the proper question was

6    whether the treaty **required** the United States to grant the FTC regardless of U.S.

7    domestic tax law.  The U.S. Tax Court's analysis was also fundamentally flawed

8    because it ignored the treaty's purpose, the structure and its text, and a statutory

9    precedent indicating that a treaty FTC claim can exist when one is not allowed

10   under the Code.

11        Once the issue is properly characterized, the answer in the *Toulouse* case

12   (which applies here given the substantial similarity in the RFDT articles) is clear:

13   The French, Italian and South Korean tax treaties all require the U.S. to provide the

14   taxpayer with a FTC to offset the NIIT found in section 1411 of the Code.

15        All U.S. tax treaties contain a "Taxes Covered" article.  The language of that

16   article is virtually identical in all U.S. treaties.  It provides that the taxes that are the

17   subject of the treaty include, in the case of the U.S., ***the Federal income taxes***

18   ***imposed by the Code***.  This Taxes Covered language is found in Article 1(1)(a) of

19   the South Korean Tax Treaty.  The typical Taxes Covered article also states that

20   the treaty shall equally apply to "any identical or substantially similar taxes that are

21   imposed after the date or signature" of the treaty that are in addition to, or in place

22   of, taxes in existence at the time the treaty was signed.  See, e.g., Article 1(2) of the

23   South Korean Tax Treaty.

24        Under the Government's position that a tax on "net" investment income is a

25   tax on income, then under Treas. Reg. §1.1411-1(a), provisions of the Code that

26   apply for purposes of computing taxable income under Chapter 1 would generally

27   also apply for purposes of computing net investment income ("NII").

28   Interestingly, the deductions taken into account in computing NII include the

14

deduction for foreign taxes paid found in 26 U.S.C. § 164 ("§ 164 deduction").
Treas. Reg. § 1.1411-4(f)(3)(iii).  The regulation  states that the deduction is not
allowable if the taxpayer claims an FTC in the same year. The purpose of this rule
was almost certainly to address a comment that the IRS received with respect to
prior proposed regulations, to the effect that although the § 164 deduction and the
FTC are mutually exclusive under the Code, a taxpayer might take the position that
the tax on NII is a separate tax from that in Chapter 1 and claim the § 164
deduction for the NII tax while claiming an FTC for the Chapter 1 tax.[31] Such an
approach would treat taxpayers whose NII is foreign source more favorably than
those whose NII is domestic source. To preclude such a result, the Treasury
regulations do not treat the NII as a separate tax.  If it is an income tax, the NII tax
is subject to Tax Treaties.  It is irrelevant whether the tax is set out in Chapter 1 or
Chapter 2A of the Code.

A treaty is a contract. The correct question in *Toulouse* should have been
whether that treaty/contract required the U.S. to grant a taxpayer a credit for the
French and Italian taxes imposed. This is not semantics, but fundamental to the
purpose and operation of tax treaties. A tax treaty sets out detailed rules
prescribing which country may tax the income of persons who would otherwise be
subject to tax in both countries.  Each treaty country has a compelling sovereign
interest in ensuring that income of a taxpayer that the treaty allows it to tax is not
subject to taxation a second time in the other country.  South Korea's right to tax
income it regards as having a South Korean source, or as belonging to a South
Korean resident, would be undermined if the U.S. were permitted to tax that same
taxpayer on the same income, and vice versa.

---

[31] See New York State Bar Association Section Report No. 1284, "Report on
the Proposed Regulations Under Section 1411," at pages 33-34 (May 15, 2013).
("NYSBA Report").

1    The RFDT article which is contained in all treaties is the mechanism through
2    which double taxation of the same income is avoided and is central to the manner
3    in which a tax treaty functions. In the RFDT article, the U.S. has promised its
4    treaty partner that it will provide an FTC for that country's taxes on income, *subject*
5    *to the limitations of the Code* described below.  The foregoing analysis leads to the
6    inescapable conclusion that since NII is an income tax covered by tax treaties, the
7    United States is required to grant a FTC in respect of an otherwise creditable
8    foreign tax imposed on such NII.

9    Normally, this is where the analysis would stop, but the court in *Toulouse*,
10   pointing to the qualifying phrase "[i]n accordance with the provisions and subject
11   to the limitations of the law of the United States," concluded that "the plain text of
12   the treaty provisions on which petitioner relies subject the terms of the Treaties,
13   and thus any allowable credit to the provisions and limitations of the Code."
14   *Toulouse v. Comm'r*, 157 T.C. at 58.  The court interpreted that qualifying phrase
15   to mean **that the FTC must be allowed by U.S. domestic law**.  Since U.S. tax law
16   allows a FTC only for taxes imposed by Chapter 1, and the NIIT was enacted as a
17   new Chapter 2A, the U.S. Tax Court concluded that the RFDT article did not apply
18   to the NIIT tax.  *Id*. at 62.

19   If the U.S. Tax Court's analysis is correct, this would lead to the absurd
20   result that the U.S. could unilaterally avoid its treaty obligations by the simple
21   expedient of enacting new income taxes in new chapters of the Code, in direct
22   violation of the provisions of U.S. tax treaties that make them applicable to
23   identical or substantially similar taxes imposed after the date or signature of the
24   treaty that are in addition to, or in place of, taxes in existence at the time the treaty
25   was signed.

26   Fortunately, such a result is not mandated by the qualifying phrase cited in
27   the court's decision. If the qualifying language is instead interpreted, as it must be,
28   in the context of the overall purpose of a tax treaty and with an understanding of

1  how the U.S. FTC rules operate, a very different meaning is evident.

2       Specifically, the U.S. does not grant a full dollar-for-dollar FTC in respect of

3  any creditable foreign tax paid.  Rather section 904 of the Code limits the credit to

4  the proportion of the U.S. tax against which the credit is taken that the taxpayer's

5  foreign-source income bears to his or her worldwide income.  Other limitations to

6  the amount of the FTC that can be taken are also found in section 904 of the Code.

7  It is these limitations -- the ones found in section 904 of the Code -- that are being

8  referred to in the clause "subject to the limitations of the law of the United States"

9  found in clauses such as Article 5(1) of the South Korean Tax Treaty (and also

10 found in Articles 24(2)(a) of the French Income Tax Treaty and Article 23(2)(a) of

11 the Italian Income Tax Treaty).  What that clause does not do and cannot refer to is

12 a provision of U.S. law that purports to treat an income tax covered by the treaty as

13 not being subject to the RFDT article of the treaty.  Moreover, no provision of the

14 Code purports to do any such thing.  It is irrelevant that U.S. domestic law would

15 not provide an FTC against the NIIT in non-treaty cases.  There is no inconsistency

16 in the fact that when a treaty applies, the treaty governs.  Accordingly, this Court

17 should ignore the Defendant's reliance on the Toulouse case in support of its

18 Motion and should, instead, allow Plaintiff the relief requested in his complaint –

19 that he is entitled to a FTC in the amount of $638,282 to offset the NIIT paid.

20            b.   If the NIIT is an Income Tax Then it is Covered Under the

21                 Terms of the South Korean Tax Treaty

22      Article 1(1)(a) of the South Korean Tax Treaty provides that, in the case of

23 the U.S., the treaty covers the Federal income taxes imposed by the Code.

24 Although the NIIT did not yet exist at the time of the ratification of the South

25 Korean Tax Treaty, Article 1(2) of the treaty contemplates the eventuality of new

26 taxes by providing: "[t]his Convention shall also apply to taxes substantially similar

27 to those covered by paragraph (1) which are imposed in addition to, or in place of,

28 existing taxes after the date of signature of this Convention."

If the NIIT is an income tax that is applied on items of income on which a South Korean resident who was a U.S. citizen is also required to pay South Korean taxes, then it would appear that absent application of the South Korean Tax Treaty, the Code's framework results in double taxation since the Code apparently does not provide for a FTC to offset the NIIT because the NIIT appears in Chapter 2A and not Chapter 1 of the Code.  The question squarely before this Court, therefore, is whether the South Korean Tax Treaty, the stated purpose of which is to avoid double taxation, provides for a FTC where none is permitted under the Code's FTC provisions.  The Defendant, in a Treasury Decision published shortly after the enactment of the NIIT, took the view that on the basis of the terms of the Government model tax treaty, no such treaty relief would be allowed.[32]

However, the Defendant's interpretation should not be entitled to any deference because it undermines the purpose of the South Korean Tax Treaty to eliminate double taxation, ignores the elaborate treaty mechanisms for how foreign taxes are credited, incorrectly presents sections 27 and 901 of the Code as "limitations", and ignores the general principle established by Congress that treaty FTC entitlement is wider than that contained in the Code.

(1).   Defendant's Interpretation of the South Korean Tax Treaty is not Entitled to Deference

The standard for interpretation of an agreement between the U.S. and another sovereign nation is well established -- "[t]he clear import of treaty language controls unless 'application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectation of the signatories.'" *Sumitomo Shoji America Inc. v Avagliano*, 457 U.S. 176, 180 (1982). The "shared expectations" of the sovereigns govern the interpretation of the treaty

---

[32] See, Treasury Decision 9644, 78 FR 72393-72449, December 2, 2013, as corrected by 79 FR 18161, April 1, 2014 ("Treasury Decision 9644").

as evidenced by the text used in the agreement, unless the result does not accord with the literal language used. *Great-West Life Assurance Co. v. United States*, 678 F.2d 180, 183 (Fed. Cir. 1982). Furthermore, "[t]he practice of treaty signatories counts as evidence of the treaty's proper interpretation since their conduct generally evinces their understanding of the agreement they signed." *United States v. Stuart*, 489 U.S. 353, 368 (1989). At this time, Plaintiff does not know if any discussions took place between the U.S. and South Korean Governments at the time the NIIT was enacted. This is one of the items of information that Plaintiff will request from the Defendant once this case is at issue and discovery commences. Thus, absent any extrinsic evidence to the contrary, as the Federal Circuit Court of Appeals stated in *Xerox Corp. v. United States*, 41 F.3d 647, 652 (1994), "[i]n construing a treaty, the terms thereof are given their ordinary meaning in the context of the treaty and are interpreted, in accordance with that meaning, in the way that best fulfills the purpose of the treaty."

Two more principles are also relevant in the interpretation of a treaty. First, ordinarily, the Executive Branch's interpretation of a treaty is given respect. *El Al Israeli Airlines v. Tseng*, 525 U.S. 155, 168 (1999). In cases where contemporary evidence shows the shared expectations of the treaty partners accord with the Executive Branch's interpretation, courts "must, absent extraordinarily strong contrary evidence, defer to that interpretation." *Sumitomo*, *supra* at 185; *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961). However, as in the case at bar, that respect evaporates when the Executive Branch's interpretation is not supported by negotiating history, diplomatic communications or the method by which the other sovereign has interpreted the treaty. *National Westminster Bank v. United States*, 512 F.3d 1347 (Fed. Cir. 2008); *Eshel v. Comm'r*, 831 F.3d at 521 (where the U.S. asserts a meaning of a treaty without analysis of the shared expectations of the two sovereigns, its position "is the legal equivalent of trying to clap with one hand").

Second, "where a provision of a treaty fairly admits of two constructions, one restricting, the other enlarging, rights that may be claimed under it, the more liberal interpretation is to be preferred." *United States v. Stuart*, 489 U.S. at 368, quoting *Bacardi Corp of Am. v. Domenech*, 311 U.S. 150, 163 (1940). The South Korean Tax Treaty, has as one of its principal purposes to avoid what the Supreme Court has described as "the evil of double taxation." *Burnet v. Chicago Portrait Co.,* 285 U.S. 1, 7 (1932). Thus, the South Korean Tax Treaty should be read in a way to avoid that evil, not to perpetuate it.

The consequence here is that a treaty must be interpreted in accordance with the shared expectations of its parties based on the language used in a way that fulfills the treaty's purpose. Although the Defendant would ordinarily be given significant deference in its interpretation of the treaty, that deference is lost when (i) no evidence exists that its interpretation accords with the views of its South Korean counterparts and (ii) its interpretation runs contrary to the treaty's very purpose of avoiding double taxation of income. Since this is true here, no deference should be accorded to the Defendant's treaty interpretation in this case.

(2). Defendant's Interpretation Undermines the Structure of the South Korean Tax Treaty and Renders Moot a Series of Interrelated Treaty Provisions.

The interpretation of any article in the South Korea Tax Treaty necessarily requires consideration of the treaty as a whole. Article 4(1) of the South Korean Tax Treaty states in general that "a resident of one country may be taxed by the other country on any income from sources within that other country and only on such income, subject to the imitations set forth in the Convention."[33] There is also

---

[33] *See* Article 4(1) – *General Rules of Taxation, Technical Explanation of the Convention between the United States of American and the Republic of Korea for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to taxes on Income and the Encouragement of International Trade and*

a so-called "savings clause" contained in Article 4(4) of the South Korea Tax Treaty, which states that, "[n]otwithstanding any provision of the Convention except paragraph 5 of this Article, a Contracting State (here that would be the U.S.) may tax * * * its citizens as if the Convention had not come into effect." The effect of such a clause is to nullify the application of the treaty for a U.S. citizen, other than for articles specifically excluded from the terms of the saving clause. See, e.g., *Filler v. Comm'r*, 74 T.C. 406, 409-410 (1980).

Article 4(5) of the South Korean Tax Treaty, however, allows US citizens and residents certain benefits of the South Korean Tax Treaty notwithstanding the saving clause. Specifically, this Article states that the saving clause "shall not affect: (a) the benefits conferred * * * under Article 5 (Relief From Double Taxation) * * *." The purpose of this carve out is to prevent the saving clause "from applying where it would contravene provisions of the Convention that are intended to extend U.S. benefits to US citizens and residents."[34] The obvious question then follows: why would there be an elaborate set of provisions in the South Korean Tax Treaty entitling a US citizen to claim a FTC if the only basis for a taxpayer to claim a FTC is contained in U.S. domestic provisions contained in the Code? If it had been the shared expectations of the treaty partners that only the terms of the Code would determine entitlement to FTCs, then simply not having Article 5 at all or having it be subject to the provisions of the savings clause would have achieved that result. Instead, the Defendant's reading of the treaty entails an elaborate charade under which: (1) Article 4(4) of the South Korean Tax Treaty denies a U.S. citizen any rights other than those contained under domestic law by operation of the savings clause; (2) A carve out to the saving clause would apply under Article 4(5) of the South Korean Tax Treaty offering the U.S. citizen the

_____

*Investment*, Signed at Seoul on June 4, 1976 (the "Technical Explanation").

[34] See Technical Explanation at Article 4, Paragraph 4.

ability to claim a FTC under Articles 5(1) and 5(3)  The wording of Article 5(1) of the South Korean Tax Treaty would restrict FTC relief to that allowed under U.S. domestic law.  This convoluted route would have the effect of rendering numerous South Korean Tax Treaty provisions meaningless, with no purpose or effect, which is a fundamentally untenable proposition.  See *United States v. Butler*, 297 U.S. 1, 65 (1936) ("words cannot be meaningless, else they would not have been used").

Indeed, it is hard to understand what the Defendant contends is the purpose of Article 5(1).  If the article simply provides that domestic law governs the allowance of a FTC, the article has no independent effect.  A more logical reading of the words of Article 5(1) is that a FTC is allowed "in accordance with the provisions and subject to the limitations of the law of the United States" (*i.e.*, based on the Code), but the subsequent parenthetical phrase "as it may be amended from time to time without changing the principles hereof," ensures that that any South Korea tax covered by the South Korean Tax Treaty may be credited against U.S. income taxes that come within the treaty's scope.  So, the amount of the credit is indeed determined based on the provisions and limitations of the Code, but the general principle allowing a credit of South Korean income taxes against U.S. income taxes to avoid double taxation is guaranteed.  In the context of the South Korean Tax Treaty, as discussed in more detail below, that parenthetical phrase offers Plaintiff the relief sought here – a FTC applied against Section 1411 of the Code which did not exist at the time the South Korean Tax Treaty was ratified.

(3).  Denying a FTC Based on the Enactment of a New U.S. Income Tax Does Not Comport with the General Treaty Principle that a FTC is Allowed Against a U.S. Income Tax

The question arises as to the interplay between a "United States income tax" covered by Article 1(a) of the South Korean Tax Treaty and the provisions of its Article 5, entitled "Relief From Double Taxation." The "principles hereof" referred

to in Article 5(1) of the South Korean Tax Treaty is that a credit is allowed for South Korean income taxes against U.S. income taxes.  The passage into law of a new "United States income tax" cannot be said to have any bearing under the treaty on whether an amount of South Korean tax paid is a foreign income tax that is creditable per se; up to $638,412 of the South Korean income taxes paid here by Plaintiff are eligible for a FTC against his substantive U.S. tax liability.  Nor does a new "United States income tax" alter the amount of the section 904 limitation of the Code – Plaintiff does not, and could not, argue that South Korean income taxes are creditable against, for example, U.S. source income.  Instead, the Defendant has concluded, without any explanation, that by virtue of the limitations of "U.S. law," and in particular sections 27(a) and 901 of the Code, that a credit is not allowed against the NIIT.  See Treasury Decision 9644, supra.

As was explained previously section 901(a) of the Code says nothing of the sort.  It states" "the tax imposed by this chapter [Chapter 1] shall, subject to the limitation of section 904, be credited with the amount provided by the applicable paragraph of subsection (b)."  The Technical Explanation for Article 5 of the South Korean Tax Treaty provides the rationale of the language used by Article 5(a):

> … [T]he United States agrees to allow a United States citizen or resident as a credit against the United States tax, *the appropriate amount* of Korean tax in accordance with the provision and *subject to the limitations of the law of the United States* (as it may be amended from time to time without changing the principles of paragraph 1 [being to relief such US citizen from Double Taxation on income earned in South Korea]. (emphasis added).

The Technical Explanation then goes on to provide that:

> The appropriate amount will be based upon the amount of tax paid to Korea, but the credit *shall not exceed the limitations* (for the purpose of limiting the credit to the United States tax on income from sources within Korea * * *) *provided by United States law for the taxable year*.  *This provision does not require the United States to maintain a per-country or overall limitation in the future so long as the general principle of a FTC remains in effect*. (emphasis added)

The limitations referred to in the Technical Explanation refer to the principles found in section 904 of the Code regarding the amount of FTCs a taxpayer may

claim and not something broader as the Defendant claims.

Would it be the shared expectation of the treaty partners that a subsequently enacted U.S. income tax could be offset by a credit for South Korean income taxes (section 901 of the Code) provided the limitation requirements in section 904 of the Code are met?  Of course, it would.  Enactment of the NIIT is precisely the type of amendment contemplated by the provisions of Article 1(2) of the South Korean Tax Treaty and the essential and meaningful parenthetical text of Article 5(1) ensures that the general principle – that a credit is allowed for a subsequently enacted U.S. income tax – is guaranteed.  Ignoring this clear language, the Defendant argues that sections 27(a) and 901 of the Code somehow create a limitation that sweeps in a prohibition on crediting any South Korean Taxes against any subsequently enacted U.S. income tax that is not found in chapter 1. Such an extreme reading of the South Korean Tax Treaty without any regard to principles of treaty interpretation however is really no more than simply the Defendant's "say-so" and should be given short shrift by the Court.

## IV. **Conclusions**

Plaintiff respectfully requests that the Court deny Defendant's Motion because the Complaint sets forth two legally sufficient arguments to support the relief requested.

Respectfully submitted

Dated:  October 10, 2022 _____

Guy H. Glaser
Attorney for Plaintiff