E. MARTIN ESTRADA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
GAVIN L. GREENE (Cal. Bar No. 230807)
JOLENE TANNER (Cal. Bar No. 285320)
Assistant United States Attorneys
    Federal Building, Suite 7211
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-4600
    Facsimile: (213) 894-0115
    E-mail: Gavin.Greene@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| Paul Yong Kim,<br><br>    Plaintiff,<br><br>v.<br><br>United States of America,<br><br>    Defendant. | Case No. 5:22-cv-00691-SPG-SPx<br><br>Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Complaint<br><br>Date:        November 16, 2022<br>Time:        1:30 p.m.<br>Courtroom:  5C<br>Location:    First Street Courthouse<br>                  350 West First Street<br>                  Los Angeles, California<br><br>Hon. Sherilyn Peace Garnett |

1  Plaintiff has failed to state a cause of action, and his complaint should
2 be dismissed under Rule 12(b)(6) without leave to amend. The Internal
3 Revenue Code allows for a foreign tax credit pursuant to Section 27 that can
4 be used to reduce the tax in Chapter 1, but it cannot be used to reduce the
5 NIIT in Chapter 2A.[1] Neither the Income Tax Treaty, nor the Totalization
6 Agreement change that result. As explained by the Tax Court in *Toulouse*,
7 Congress did not intend for the NIIT to be offset by the Foreign Tax Credit.
8 The NIIT has precedence over the Tax Treaty under the last-in-time rule,
9 the Court may not rewrite the Tax Treaty, and the Totalization Agreement
10 does not entitle Plaintiff to a refund.

**A. Plaintiff has failed to state a cause of action, and his complaint should be dismissed under Rule 12(b)(6) without leave to amend**

Plaintiff lacks a cognizable legal theory, and dismissal on a question of law should be entered against Plaintiff without leave to amend. "A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory." *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 485 F. Supp. 3d 1225, 1227 (C.D. Cal. 2020) (J. Wu) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Questions of law may be resolved on a motion to dismiss under Rule 12(b)(6), and dismissal based on a question of law should be entered without leave to amend. *See Gorenstein v. Ocean Spray Cranberries, Inc.*, No. CV 09-5925-GAF, 2009 WL 10201128, at *2–3 (C.D. Cal. Dec. 18, 2009) (J. Feess).

---

[1] Unless otherwise indicated, all citations are to sections of the Internal Revenue Code of 1986 (the "Code") [26 U.S.C.], in effect during 2015, the tax year at issue. The acronym "NIIT" refers to the Net Income Investment Tax imposed by 26 U.S.C. § 1411.

2

For purposes of this motion, the United States does not dispute any of the facts set forth in the complaint, but, nevertheless, Plaintiff fails to state a claim as a matter of law. The only fact that Plaintiff identifies for discovery (Opp. at 19) is whether the United States consulted with South Korea when the NIIT was enacted. This question has no bearing on the case because the plain texts of both the Tax Treaty and Totalization Agreement – and the subsequently enacted NIIT – are unambiguous and do not entitle Plaintiff to the relief sought.

**B. As explained by the Tax Court in *Toulouse*, Congress did not intend for the NIIT to be offset by the Foreign Tax Credit**

Through sections 27 and 901, Congress provided that the Foreign Tax Credit may only be applied as against the tax imposed by Chapter 1 of the Internal Revenue Code. The NIIT is in Chapter 2A. As explained by the Tax Court in *Toulouse v. Commissioner*, "[t]he enactment of a 3.8% net investment income tax as part of Chapter 2A is a clear expression of Congressional intent that credits against section 1 [income tax] not apply against the section 1411 tax." 157 T.C. 49, 60 (2021).[2] This is consistent with Treasury Regulation § 1.1411–1(e), which provides that the Foreign Tax Credit under sections 27 and 901 cannot be used to reduce the NIIT under section 1411. *See Baldwin v. United States*, 921 F.3d 836, 842–43 (9th Cir. 2019) (the court must follow the regulation if the statute is silent or ambiguous on the question, and the agency's interpretation is based on a permissible construction of the statute). Plaintiff casually asserts that the

---

[2] Tax Court opinions are persuasive authority. *Gragg v. United States*, 831 F.3d 1189, 1192 (9th Cir. 2016) (citing *Dobson v. Comm'r*, 320 U.S. 489, 502 (1943)) ("The Tax Court is informed by experience and kept current with tax evolution and needs by the volume and variety of its work ... [and] uniform administration would be promoted by conforming to [its decisions] when possible.").

3

Court should ignore the express provisions of the limitations of the Foreign Tax Credit to Chapter 1 taxes. Such a proposition not only ignores the express provisions of the Code and the Treasury Regulations, but also implies a non-existent administrative scheme, and a benefit that is not available to any other taxpayer. Article 5(1) of the Tax Treaty provides that United States foreign tax credits will be "in accordance with" and "subject to the limitations" of the Code, and as such, ensures that any allowed tax credit must conform to the statutory foreign-tax-credit framework already in place.

**C. The NIIT has precedence over the Tax Treaty under the last-in-time rule**

The NIIT was enacted in 2010, after the Tax Treaty was signed in 1976, and as such, would override any potential irreconcilably inconsistent relief under the Tax Treaty. Under the last-in-time rule, the Supreme Court has held that "that an Act of Congress…is on a full parity with a treaty, and that when a statute which is subsequent in time is inconsistent with a treaty, the statute to the extent of conflict renders the treaty null." *Breard v. Greene*, 523 U.S. 371, 376 (1998) (quoting *Reid v. Covert*, 354 U.S. 1, 18 (1957)) (plurality opinion); *see also Whitney v. Robertson*, 124 U.S. 190, 194 (1888) (holding that if a treaty and a federal statute conflict, "the one last in date will control the other"). Article 5(1) of the Tax Treaty is fully consistent with Congress's decision to exclude the NIIT from the foreign tax credit regime as the Tax Treaty expressly defers to the Code in determining the limitations under United States law. However, even if the Court were to conclude that the language of the Tax Treaty and the Code cannot be reconciled, the Code would take precedence over the Tax Treaty because the enactment of the NIIT is more recent.

**D. The Court may not rewrite the Tax Treaty**

In interpreting a treaty, "[t]he analysis must begin … with the text of the treaty and the context in which the written words are used." *Air France v. Saks*, 470 U.S. 392, 397 (1985) (citation omitted). While the United States may cede that power to tax by treaty, any relinquishment of that sovereign right must be clearly expressed and may not be inferred from ambiguous text. *See Jefferson Branch Bank v. Skelly*, 66 U.S. 436, 446 (1861) ("[N]either the right of taxation, nor any other power of sovereignty, will be held . . . to have been surrendered, unless such surrender has been expressed in terms too plain to be mistaken.") (quoted by *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1355 (Fed. Cir. 2001)).

Plaintiff asks the Court to adopt his interpretation of Article 5 as a required liberal construction of the Tax Treaty.[3] However, as explained by the Fifth Circuit:

> [Liberal construction of a treaty] does not mean . . . that treaty provisions are construed broadly. Rather, this "liberal" approach to treaty interpretation merely reflects … the willingness of courts, when interpreting difficult or ambiguous treaty provisions, to "look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties."

*Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 638–39 (5th Cir. 1994) (quoting *Air France*, 470 U.S. at 396).

---

[3] Plaintiff cites *United States v. Stuart*, 489 U.S. 353 (1989). *Stuart* involved the construction of the mutual assistance provisions of the U.S.-Canada tax treaty, in the context of enforcement of summonses issued by the United States' Internal Revenue Service to obtain information requested by Canadian taxing authorities for determining Canadian citizens' tax liabilities. It did not involve issues of substantive tax law or affect the sovereign power of the United States to tax its own citizens.

5

The relevant language of the Tax Treaty is not difficult or ambiguous. The Tax Treaty provides that the United States shall allow a foreign tax credit for Korean tax paid "subject to the limitations of the law of the United States." Article 5(1), first sentence. As *Toulouse* recognized, this broad limitation allows the United States to limit the taxes against which the credit is allowable.

Plaintiff impermissibly reads this provision to mean that the credit is subject to only the narrow limitation in amount allowable under section 904, which limits credits to a proportional amount of the taxpayer's foreign-source income. Opp. at 17, 23. But Article 5(1) contains a separate limitation on the amount of the credit "for the purpose of limiting the credit to the United States tax on income from sources within Korea or on income from sources outside the United States," *i.e.*, the section 904 limitations. Article 5(1), second sentence. Plaintiff quotes the Technical Explanation regarding this narrow limitation to argue that the broad limitation in the first sentence should be read to mean the same thing. Opp. at 23. Plaintiff thus reads "subject to the limitations of the law of the United States" to a nullity. Had Congress intended the Tax Treaty to withdraw all United States law limitations on foreign tax credits except those in section 904, it would have done so explicitly.

The Tax Treaty and the Code together prohibit Plaintiff from applying his foreign tax credit to reduce the NIIT because the foreign tax credit under sections 27 and 901 by the express terms of the those sections may only reduce taxes imposed by Chapter 1 of the Code, and the NIIT is located in Chapter 2A, not Chapter 1. Plaintiff places great weight on the United States' and South Korea's intention to avoid double taxation. Opp. at 7-8, 12-13, 18, 20. But, general policies do not override the specific Treaty language, which the negotiators drafted and the Senate ratified. As the Tax Court

6

explained in *Toulouse*, while a "general purpose" of the Tax Treaty may be "to reduce double taxation," "the specific provisions of [the] [T]reaty must be applied as written." 157 T.C. at 60. Plaintiff repeatedly cites *Toulouse* and acknowledges that it held that treaties do not provide an independent basis to apply the Foreign Tax Credit against the NIIT (Opp. at 14), but Plaintiff cites no authority to the contrary. Further, while one of the Tax Treaty's purposes was the avoidance of double taxation, it was not only the purpose of the treaty. The Tax Treaty is also intended to prevent fiscal evasion, as is mentioned repeatedly in the transmittals for the Tax Treaty. Those two policies can work at cross purposes, and neither is absolute.

**E. The Totalization Agreement does not entitle Plaintiff to a refund**

The Totalization Agreement does not entitle Plaintiff to a refund. The Totalization Agreement only covers Chapters 2 and 21 of the Internal Revenue Code. Congress established the NIIT in Chapter 2A, so it is not covered by the Totalization Agreement. Even if the NIIT was conceivably covered, as with the Tax Treaty, the NIIT (2010) came after the Totalization Agreement (2001), and as such, the NIIT has precedence under the last-in-time rule with respect to inconsistencies between the NIIT and the Totalization Agreement. The Court is bound by the text of the Totalization Agreement and cannot rewrite that text to accomplish Plaintiff's aim.

The NIIT taxes individuals on their investment income, unlike the Social Security and Medicare which tax employees' wage income. As Plaintiff acknowledges, he is subject to the NIIT, which, unlike Social Security and Medicare taxes, is not covered by the Totalization Agreement (Opp. at 5). Unlike Social Security and Medicare taxes, the NIIT has no corresponding statutory offset for foreign taxation.

The Totalization Agreement benefits citizens of the United States by providing them with a credit for work in South Korea when determining if

they qualify for Social Security benefits. In general, a person employed within the territory of either the United States or South Korea, with respect to that employment, is "subject only to the laws" of that nation. Totalization Agreement, Article 4, ¶ 1. The term "laws" refers to two chapters of the Internal Revenue Code: chapter 2 (which establishes Social Security and Medicare taxes for people that are self-employed), and chapter 21 (which establishes the same taxes for wage earning employees). Totalization Agreement, Article 1 ¶ 1(b) and Article 2 ¶ 1(b)(ii).

As Plaintiff points out, the Totalization Agreement also applies to "future laws which amend or supplement the laws specified in Chapter 2 and 21 of the Code." Opp. at 5:22-6:1 (brackets omitted); Totalization Agreement, Article 2 ¶ 3. If the NIIT was included in Chapter 2 or 21, the "future laws" clause might be relevant, but the NIIT is in a separate chapter. The NIIT does not supplement Social Security and Medicare taxes because it is a tax on investment income, rather than wages. Moreover, as Plaintiff acknowledges, the revenues generated by the NIIT are allocated separately from revenues generated by Social Security and Medicare taxes, "tax revenue generated under the NIIT is not specifically reserved for expenditures on Social Security or Medicare Programs." Opp. at 10:9-13.

Placing the NIIT in a separate chapter of the Code, basing the tax on investment income rather than wages, not providing an exemption for foreign taxation, and accounting for the revenues separately, demonstrate that Congress did not intend to amend or supplement Social Security or Medicare taxes such that the Totalization Agreement would grant a United States citizen and resident that worked part of the year in South Korea special treatment by excluding him from his responsibly to pay the NIIT.

### F. Conclusion

The Totalization Agreement, by its own terms, addresses taxes imposed by Chapter 2 and 21 of the Internal Revenue Code. Congress, when it subsequently adopted the NIIT, placed it in a new Chapter 2A. The Foreign Tax Credit only applies to taxes imposed by Chapter 1 of the Internal Revenue Code, not to those imposed by Chapter 2A, and the Treasury Regulation prohibits reducing the NIIT by the foreign tax credit.

Plaintiff provides no legal support for the Court to ignore the express terms of the Internal Revenue Code, Treasury Regulations, Tax Treaty, and Totalization Agreement. Accordingly, Plaintiff has failed to state a cause of action, and his complaint must be dismissed. Because it must be dismissed on a question of law, and not for insufficiency of the facts pleaded, it should be dismissed without leave to amend.

E. MARTIN ESTRADA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

Dated: November 2, 2022

/s/
GAVIN GREENE
JOLENE TANNER
Assistant United States Attorneys
Attorneys for the United States of America